IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FRANK SCHMIDT                    :              CIVIL ACTION
                                 :              NO. 10-1963
and                              :
                                 :
KRISTEN DONATO                   :
                                 :
        v.                       :
                                 :
CITY CENTER ANNEX                :
                                 :
O'NEILL, J.                                     NOVEMBER 28, 2011

MEMORANDUM

This personal injury lawsuit is scheduled to be tried on December 5, 2011.  Presently

before me are motions in limine filed by both parties.

BACKGROUND

Plaintiff Frank Schmidt, a UPS delivery driver, claims he suffered a back injury while

attempting to deliver a package to the Marriott Courtyard Hotel located at 21 Juniper Street in

Philadelphia.  City Center Annex, the named defendant in this matter, is the "corporate name" for

the Marriott Courtyard Hotel.  See Def.'s Resp. to Pl.'s Mot. to Amend ¶ 1 (Mar. 18, 2011) (Doc.

No. 19).

Plaintiffs[1] assert that on August 20, 2009, Schmidt backed his delivery truck into the

loading dock at the Courtyard Marriott.  The loading dock was in a raised position.  Schmidt

attempted to lower the loading dock by stepping onto it.  When he stepped off the loading dock

and onto his truck, however, the loading dock allegedly sprang up and struck him in the back.

ANALYSIS

_____

[1]      As noted in the caption, Kristen Donato, wife of plaintiff Frank Schmidt, is also
named as a plaintiff in this matter.

Defendant moves to dismiss plaintiff's claim for punitive damages.  It also moves to exclude testimony of worker's compensation payments received by plaintiff.  Plaintiffs oppose the dismissal of the punitive damages claim but do not oppose the exclusion of evidence of the worker's compensation payments.  See Pl.'s Resp. to Def.'s Mot. at 5 (Aug. 22, 2011) (Doc. No. 38).

For their part, plaintiffs move to exclude the testimony of Jasen Walker, Ed.D., defendant's vocational expert.  Defendant opposes this motion.  I will discuss each motion in turn.

## I.    Defendant's Motion to Exclude Evidence of Worker's Compensation Payments Received by Plaintiff

I will grant as unopposed defendant's motion to exclude evidence of worker's compensation payments received by plaintiff.

## II.    Defendant's Motion to Dismiss Plaintiffs' Punitive Damages Claim

Defendant argues that plaintiffs have not produced evidence demonstrating their entitlement to punitive damages.  "Pennsylvania law provides that 'punitive damages are an 'extreme remedy' available only in the most exceptional circumstances.'" Tucker v. Bernzomatic, No. 09-5881, 2010 WL 1838704, at *2 (E.D. Pa. May 4, 2010), quoting Doe v. Wyoming Valley Health Care Sys., Inc., 987 A.2d 758, 768 (Pa. Super. Ct. 2009).

> The Pennsylvania Supreme Court has . . . adopted the guidelines of Section 908(2) of the Restatement (Second) of Torts regarding the imposition of punitive damages: Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others.  Punitive damages must be based on conduct which is 'malicious,' 'wanton,' 'reckless,' 'willful,' or 'oppressive' . . . .

Salvio v. Amgen, Inc., No. 11-553, 2011 WL 3651314, at *10 (W.D. Pa. Aug. 18, 2011), citing Chambers v. Montgomery, 192 A.2d 355, 358 (Pa. 1963).  "[W]hen assessing the propriety of the imposition of punitive damages, '[t]he state of mind of the actor is vital.  The act, or the failure to act, must be intentional, reckless or malicious.'"  Hutchinson ex rel. Hutchinson v. Luddy, 870 A.2d 766, 770-71 (Pa. 2005), quoting Feld v. Merriam, 485 A.2d 742, 748 (Pa. 1984). "[P]unitive damages are not awarded for mere inadvertence, mistake, errors of judgment and the like, which constitute ordinary negligence."  Restatement (Second) of Torts § 908 cmt. b.

Plaintiffs argue that defendant displayed reckless indifference to others' safety.  The Restatement defines "reckless indifference" as follows: "[t]he actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent."  Moran for and on Behalf of Estate of Moran v. G. & W.H. Corson, Inc., 586 A.2d 416, 423 (Pa. Super. Ct. 1991), quoting Restatement (Second) of Torts § 500.  Plaintiffs have produced evidence that defendant was aware that the loading dock leveler had been malfunctioning.  They have also produced the testimony of Stanley Elliott, a loss prevention officer employed by defendant, who testified that a malfunctioning dock leveler is a "potential safety hazard."  Stanley Dep. 22:18-19.  Finally, plaintiffs have produced video evidence of the loading dock in question "snapping up" on six occasions when delivery people attempted to use the leveler.

Plaintiffs' evidence may establish negligence by defendant.  But the evidence cannot

establish that this is one of the exceptional cases in which the conduct is so outrageous that

punitive damages are appropriate.  Accordingly, I will grant defendant's motion to dismiss

plaintiffs' punitive damages claim.  I will also exclude any evidence as to defendant's wealth.

### III.    Plaintiff's Motion To Exclude Portions of Jasen Walker's Testimony

Defendant retained Jasen Walker, a vocational expert, to perform a "forensic

vocational/disability assessment."  Pl.'s Mot. ¶ 3 (Aug. 10, 2011) (Doc. No. 36).  Plaintiffs object

to the admission at trial of the following excerpts from Walker's expert reports of February 17,

2011 and July 22, 2011:

- Moreover, it is this evaluator's opinion that Mr. Schmidt's health history before August 20, 2009, one that he failed to mention during his examination, is occupationally significant and would have militated against his successful continuing in heavy physically demanding work of a UPS driver.

- Suffice it to say, Mr. Schmidt had occupationally significant impairment before the August 20, 2009, incident in question.

- He has a very significant history of low back impairment predating the accident in question.

- Mr. Schmidt's pre-existing spinal impairment would likely have militated against his continuing in heavy work, notwithstanding the accident in question.

- In addition, given his pre-accident history of low back pain with radiculopathy, it cannot be stated that Mr. Schmidt's inability to return to his customary work as a Delivery Driver for UPS is solely a function of the injuries sustained on August 20, 2009.

Plaintiffs argue that because Walker is not a physician he is not qualified to express these

opinions.  The Pennsylvania Superior Court has recognized that a vocational expert is qualified

to offer an opinion on the degree to which an individual's injury affects that individual's ability

to perform certain tasks.  See Novitski v. Rusak, 941 A.2d 43, 49 (Pa. Super. Ct. 2008).  Each of

the statements set forth above is merely a different version of the same opinion–that plaintiff's

pre-existing back injury, not the injury giving rise to this lawsuit, would have prevented him

from performing the functions of a delivery truck driver.  A vocational expert is entitled to offer

such an opinion.  It was also proper for Walker to refer to medical documents in his report as

long as such medical documents "are of a type reasonably relied upon by experts in the particular

field in forming opinions or inferences upon the subject . . . ."  Fed. R. Ev. 703.  I will therefore

deny this portion of plaintiffs' motion.  I expect that defendant will lay the necessary foundation

before seeking admission of the reports at trial.

Similarly, plaintiffs object to portions of Walker's reports that allegedly "parrot" the

following opinions of physicians that examined Schmidt:

> - "A lumbar sprain/strain is usually expected to recover within six weeks.
>   However, in the face of underlying degenerative changes it can certainly
>   take a long period of time, up to three months.  Radiculopathy, on the
>   other hand, can take longer, on the order of six months to one year."
>
> - "It is therefore my opinion that the radiculopathy is not caused by the
>   injury at the Marriott."
>
> - "After reviewing Mr. Schmidt's history, evaluation and the information I
>   do have available, I see no evidence of any ongoing work-related problem.
>   Mr. Schmidt has long since passed the period of time, when recovery from
>   the injuries which were documented should have occurred.  I, therefore,
>   see no reason for further medical care or work restrictions based upon
>   work injury."

Pl.'s Mot. ¶¶ 15(e), 15(f) & 19 (Aug. 10, 2011) (Doc. No. 36).  I will preclude Walker from

repeating the physician's opinion regarding the cause of Schmidt's radiculopathy.  I will,

however, allow Walker to refer to the physicians' statements regarding the recovery time for

radiculopathy and the need for further work restrictions, as these statements are relevant to

Walker's opinion as a vocational expert.

Plaintiffs also object to portions of Walker's February 17, 2011 report that mention the

presence of counsel and the fact that plaintiffs' counsel demanded to know what tests Walker

was going to give.  Pl.'s Mot. ¶ 14 (Aug. 10, 2011) (Doc. No. 36).  I agree that this information is

not relevant to Walker's opinion as a vocational expert.  Accordingly, I will grant this portion of

plaintiffs' motion.

Plaintiffs also object to portions of Walker's February 17, 2011 report that pertain to

Schmidt's credibility as a witness.  Pl.'s Mot. ¶ 16 (Aug. 10, 2011) (Doc. No. 36).  It is the role

of the jury to assess Schmidt's credibility.  I will therefore grant this portion of plaintiffs' motion.

Last, plaintiffs object to the statement in Walker's February 17, 2011 report that "an ISO

claim report accompanying the file material references Mr. Schmidt having sustained back

injuries on March 6 and April 26, 2006 while employed at Gunton Corporation."  Pl.'s Mot.

¶ 15(d).  Plaintiffs maintain that this statement is inadmissible as hearsay.  But "Rule 703 permits

experts to rely on hearsay."  ID Sec. Sys. Canada, Inc. v. Checkpoint Sys., Inc., 249 F. Supp. 2d

622, 695 (E.D. Pa. 2003).  Plaintiffs also assert, without support, that an "ISO," or insurance

services organization, claim is not adequately reliable.  I see no reason to conclude that the ISO

claim is so inherently unreliable that defendant's expert may not reference it.  Walker may

therefore rely upon the ISO claim.  I will deny this portion of plaintiffs' motion.

An appropriate Order follows.